IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLES REVERE KLOIBER,** | : | **Civil No.  1:20-CV-1711** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **KILOLO KIJAKAZI,** | : | |
| **Acting Commissioner of Social Security[1],** | : | |
| | : | |
| **Defendant** | : | |

**MEMORANDUM OPINION**

## I.    Introduction

The Supreme Court has underscored for us the limited scope of our

substantive review when considering Social Security appeals, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout
> administrative law to describe how courts are to review agency
> factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——,
> 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-
> evidence standard, a court looks to an existing administrative record
> and asks whether it contains "sufficien[t] evidence" to support the
> agency's factual determinations. Consolidated Edison Co. v. NLRB,
> 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis
> deleted). And whatever the meaning of "substantial" in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial
> evidence, this Court has said, is "more than a mere scintilla." Ibid.; see,

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on
July 9, 2021. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil
Procedure and 42 U.S.C. § 405(g) Kilolo Kijakazi is substituted for Andrew
Saul as the defendant in this suit.

e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

In the instant case, the plaintiff challenges the legal sufficiency of an Administrative Law Judge's decision denying his application for disability benefits. Charles Kloiber is a younger worker, in his early 40's at the time of the alleged onset of his disability. Kloiber's disability application was notable for its paucity of proof. Kloiber provided no medical opinion support for his claim of disability, and the treatment record relating to the period between his alleged date of onset, May of 2014, and his date last insured, December 2016, was meager, consisting of only a few dozen pages of unremarkable treatment notes. Mindful of the fact that substantial evidence, "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154, we find that the ALJ adequately addressed the sparse medical evidence in this case when concluding that Kloiber had not met the exacting standard for demonstrating an entitlement to disability benefits. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner denying this claim.

2

II.   **Statement of Facts and of the Case**

On February 13, 2017, Charles Kloiber applied for disability benefits under Title II of the Social Security Act, alleging an onset of disability in May of 2014. (Tr. 21). Kloiber was born in 1975, was in his early 40's at the time of the alleged onset of his disability and was defined as a younger worker under the Commissioner's regulations. (Tr. 27). Kloiber had prior employment as a forklift operator, machine operator, and a groundskeeper. (Id.) In his disability application, Kloiber alleged that he was disabled due to obesity, depression, anxiety, hypertension, and hearing loss. (Tr. 23). Kloiber's date last insured for purposes of the Social Security Act was December 31, 2016. (Tr. 23). Thus, the analysis of the ALJ and now this court is focused upon the evidence of disability between the date of alleged onset—May 1, 2014—and Kloiber's date last insured, December 31, 2016.

With respect to this pertinent time period, Kloiber produced no report from any medical source opining that he was disabled due to these medical and emotional impairments. Moreover, the medical treatment records provided by Kloiber relating to this relevant timeframe were meager, consisting of several dozen pages of periodic treatment notes. (Tr. 306-329). These treatment notes, in turn, confirmed diagnoses of obesity, hypertension, and anxiety for Kloiber but also noted that he

3

was alert and oriented in place and time. (Tr. 307, 316, 323, 328). Moreover, the treatment notes consistently described Kloiber as well-nourished and in no acute distress. (Tr. 307, 310, 313, 316, 320, 323, 328). Further, the examination observations by Kloiber's treating physician were unremarkable. According to the doctor, Kloiber's head, heart, lungs, abdomen, and extremities were all described as normal. (Tr. 307, 310-11, 313-14, 316-17, 318, 320-21, 323-24, 328).

Given the very limited treatment records provided by Kloiber relating to this relevant time period and the lack of any medical opinions identifying disabling impairments, the state agency experts who examined Kloiber's sparse medical history also declined to describe him as disabled. Thus, On May 17, 2017, Dr. Kurt Maas, a state agency medical expert, noted that:

> We do not have an exam documenting the claimant's functioning prior to DLI [date last insured]. Last musculoskeletal exam was performed in 2015. This exam was normal throughout. There is insufficient evidence to make a determination [of disability].

(Tr. 159).

Likewise, Dr. Timothy Ostrich, a state agency psychologist, noted on May 10, 2017 that Kloiber:

> [R]eceived medication management services to address symptoms of depression/anxiety at DLI. He was not involved in any mental health counseling. Symptoms appeared to be under control through medication only and did not significantly impact functioning at that time.

4

(Tr. 160).

The adult function reports submitted by Mr. Kloiber and his mother also strongly suggested that Mr. Kloiber had the capacity to perform some work. While Mr. Kloiber's mother stated that it was "very evident" that he was impaired (Tr. 241), her third-party report noted that he cared for pets, did some housework, went for walks, had no problems with his personal care, and prepared his own meals. (Tr. 236-38). According to Kloiber's mother he also could drive, shop, handle his personal finances, and socialize with others. (Tr. 239-40). In his own adult function report, Kloiber confirmed that he cared for pets, prepared his own meals, did household tasks, shopped, handled his personal finances, drove, and walked. (Tr. 254-57). He also stated that he often engaged in hobbies like walking and collecting movies and enjoyed hanging out with friends "a lot." (Tr. 258).

It is against this factual backdrop that the ALJ conducted a hearing in this case on November 28, 2018. (Tr. 33-69). The plaintiff and a vocational expert both testified at this hearing. Following this hearing on May 21, 2019, the ALJ issued a decision denying Kloiber's application for benefits. (Tr. 18-29). In that decision, the ALJ first concluded that the plaintiff met the insured status requirements of the Act through December 31, 2016. (Tr. 23). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Kloiber's obesity, depression,

5

anxiety, hypertension, and hearing loss were severe impairments. (Tr. 23). At Step 3 the ALJ determined that the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 24-25).

The ALJ then concluded that Kloiber retained the residual functional capacity (RFC) to perform a limited range of light work. (Tr. 25). In reaching this RFC assessment, the ALJ noted the relative paucity of any treatment records for Kloiber, the lack of any medical opinion evidence supporting a claim of complete disability, and the modest and unremarkable treatment history relating to Kloiber's care during the relevant timeframe. (Tr. 25-27). The ALJ also concluded that this RFC assessment was consistent with Kloiber's self-reported activities of daily living, while finding that the report by Kloiber's mother that he was disabled was not persuasive in light of this medical evidence. (Tr. 26-27).

Given this RFC determination, the ALJ found that Kloiber could not perform his past work but retained the capacity to perform other jobs that existed in significant numbers in the national economy. (Tr. 27-28). Having reached these conclusions, the ALJ determined that the plaintiff had not met the demanding showing necessary to sustain his claim for benefits and denied this claim.

This appeal followed. (Doc. 1). On appeal, Kloiber generally attacks the sufficiency of the ALJ's analysis of this disability claim. However, given the highly deferential standard of review which applies here, we are constrained to conclude that substantial evidence supported the ALJ's findings in this case. Therefore, for the reasons set forth below, the Commissioner's decision will be affirmed.

III.   **Discussion**

A.   **Substantial Evidence Review – the Role of this Court**

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.  Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir.

1993).  But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D.Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review.

9

Simply put, "this Court requires the ALJ to set forth the reasons for his decision."

Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the

Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice, ours is a twofold task. We must evaluate the substance of

the ALJ's decision under a deferential standard of review, but we must also give that

decision careful scrutiny to ensure that the rationale for the ALJ's actions is

sufficiently articulated to permit meaningful judicial review.

This principle applies with particular force to legal challenges, like the claim

made here, based upon alleged inadequacies in the articulation of a claimant's

mental RFC. In Hess v. Comm'r Soc. Sec., 931 F.3d 198, 212 (3d Cir. 2019), the

United States Court of Appeals recently addressed the standards of articulation that

apply in this setting. In Hess, the court of appeals considered the question of whether

an RFC, which limited a claimant to simple tasks, adequately addressed moderate

limitations on concentration, persistence, and pace. In addressing the plaintiff's argument that the language used by the ALJ to describe the claimant's mental limitations was legally insufficient, the court of appeals rejected a *per se* rule which would require the ALJ to adhere to a particular format in conducting this analysis. Instead, framing this issue as a question of adequate articulation of the ALJ's rationale, the court held that, "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'" Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019). On this score, the appellate court indicated that an ALJ offers a valid explanation a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, . . . . " Hess v. Comm'r Soc. Sec., 931 F.3d 198, 214 (3d Cir. 2019).

In our view, the teachings of the Hess decision are straightforward. In formulating a mental RFC, the ALJ does not need to rely upon any particular form of words. Further, the adequacy of the mental RFC is not gauged in the abstract. Instead, the evaluation of a claimant's ability to undertake the mental demands of

the workplace will be viewed in the factual context of the case, and a mental RFC is sufficient if it is supported by a valid explanation grounded in the evidence.

## B.   Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant

is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at Step 2 of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub

nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and state that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Colvin, 962

14

F.Supp.2d 761,778–79 (W.D. Pa. 2013) (quoting <u>Gormont v. Astrue</u>, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." <u>Titterington v. Barnhart</u>, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." <u>Cummings v. Colvin</u>, 129 F.Supp.3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise where well-supported medical sources have identified limitations supporting a disability claim, but an ALJ has rejected such a determination based upon a lay assessment of other evidence. <u>Biller</u>, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when no medical opinion supports a disability finding or when an ALJ is relying upon other evidence, such as

contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all the facts and evidence. See Titterington, 174 F. App'x 6; Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113; see also Metzger v. Berryhill, 2017 WL 1483328, at *5; Rathbun v. Berryhill, 2018 WL 1514383, at *6.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07.  In addition, "[t]he ALJ must indicate in his

decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

It is against these benchmarks that we assess this appeal.

### C.    The Commissioner's Decision Should Be Affirmed.

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence," Pierce, 487 U.S. at 565, but rather "means— and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek, 139 S. Ct. at 1154.

Judged against these deferential standards of review, we find that the evidence supported the ALJ's decision that Kloiber was not entirely disabled, but rather could perform a limited range of light work. On appeal, Kloiber generally challenges the sufficiency of the ALJ's analysis of this case, but we find that substantial evidence supported the ALJ's denial of this claim.

.

17

On this score, we note that the plaintiff's argument fails to fully take into account the factual context of this case, or the RFC determination made here by the ALJ. In this case, Kloiber provided no medical opinion evidence which supported his claim of disability. Moreover, the treatment records submitted by Kloiber that related to the relevant time period were both meager and unremarkable in their clinical findings. Furthermore, in his own adult function report, Kloiber described activities of daily living that strongly suggested that he retained the capacity to perform light work. According to Kloiber, he cared for pets, prepared his own meals, did household tasks, shopped, handled his personal finances, drove, and walked. Kloiber also stated that he often engaged in hobbies like walking and collecting movies and enjoyed hanging out with friends "a lot." This evidence, standing alone, was sufficient that "a reasonable mind might accept [it] as adequate to support a conclusion" that Kloiber could perform some light work. Biestek, 139 S. Ct. at 1154.

Moreover, to the extent that Kloiber argues that the ALJ erred in failing to find that at Step 3 that he met a mental health listing requirement, we disagree. Kloiber encounters several obstacles in advancing this claim. First, he must make an exacting showing to prevail at Step 3 of this sequential analysis. To qualify for benefits at Step 3 by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, a plaintiff bears the burden of presenting "medical

findings equivalent in severity to *all* the criteria for the one most similar impairment." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 531 (1990); 20 C.F.R. §416.920(d). An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient. <u>Id.</u>

In this case, the ALJ found that Kloiber had not satisfied the paragraph B criteria for Listing 12.04. On this score:

> The Paragraph B criteria of Listings 12.02, 12.03, 12.04, 12.06, and 12.08 are identical, and require the ALJ to assess the degree of a claimant's limitation in four broad functional areas: activities of daily living; social functioning; maintaining concentration, persistence or pace; and whether the claimant has experienced repeated episodes of decompensation of extended duration. The first three areas are assessed on the following five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). The fourth area, episodes of decompensation of extended duration, is rated on the following four-point scale: none, one or two, three, four or more. <u>Id</u>. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful work. <u>Id</u>. The Paragraph B criteria are met where an impairment results in two of the following: a marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. Part 404, Subpart P, Appendix 1 §§ 12.02, 12.03, 12.04, 12.06, 12.08.

<u>Martinez v. Colvin</u>, No. 3:14-CV-1090, 2015 WL 5781202, at *8 (M.D. Pa. Sept. 30, 2015).

As a factual matter, these listing criteria plainly were not met in the instant case where the only medical opinion of record stated that Kloiber:

> [R]eceived medication management services to address symptoms of depression/anxiety at DLI. He was not involved in any mental health counseling. Symptoms appeared to be under control through medication only and did not significantly impact functioning at that time.

(Tr. 160).

Given these stringent listing requirements, and Kloiber's fairly unremarkable treatment history, it cannot be said that the ALJ erred in this Step 3 determination or in the evaluation of the medical opinion evidence.

In light of this limited medical and opinion evidence relating to Kloiber's emotional impairments, we also find that the ALJ's RFC determination sufficiently addressed Kloiber's psychological impairments when it restricted him to simple work-related decision making in a low stress work environment. On this score, we remain mindful that:

> [C]onsistent with this deferential standard of review, when we are called upon to assess whether an ALJ has sufficiently articulated a rationale for the mental and emotional components of an RFC, we have recently been instructed that this aspect of an RFC is sufficient "as long as the ALJ offers a 'valid explanation' " for the mental and emotional limitations imposed upon a worker. Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019). On this score, it has been held that an ALJ offers a valid explanation for a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence

20

showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, ...." <u>Hess v. Comm'r Soc. Sec.</u>, 931 F.3d 198, 214 (3d Cir. 2019).

<u>Vargas v. Saul</u>, No. 1:19-CV-1858, 2020 WL 2468401, at *1–2 (M.D. Pa. May 13, 2020). Adopting this pragmatic approach, mindful of the clinical and opinion support for the ALJ's simple tasks RFC, we find that the ALJ has provided a valid explanation for this decision which is all that is required under the law. Therefore, there are no grounds to set aside this decision based upon the ALJ's evaluation of the plaintiff's emotional impairments.

Finally, we conclude that the ALJ's decision adequately addressed Kloiber's presenting physical impairments—obesity, hypertension, and hearing loss. The ALJ's decision identified these impairments as severe. (Tr. 23). The decision then described the meager clinical evidence that Kloiber presented in support of these claimed impairments, while noting the lack of any medical opinion evidence supporting Kloiber's disability claim and explaining that Kloiber's self-reported activities of daily living supported a finding that he could perform a limited range of light work. (Tr. 26).

The ALJ then fashioned a residual functional capacity for Kloiber which took into account all of these physical impairments. (Tr. 25). Thus, the RFC limited him to occupations that did not involve loud noises in consideration of his hearing

difficulties. The RFC also restricted Kloiber to work which did not entail use of ladders, ropes, and scaffolds, and only required occasional crawling, stooping, kneeling, crouching or climbing stairs. These limitations addressed the medical complications resulting from Kloiber's obesity and hypertension. The RFC also cautioned against exposure to dust, gases and other irritants, further accounting for these physical limitations.

In our view, this discussion adequately addressed Kloiber's physical impairments on this record, where no medical opinion supported his disability claim. In particular, we find that the consideration of Kloiber's obesity-related conditions met the standards prescribed by law. In Diaz v. Comm'r of Soc. Sec., 577 F.3d 500 (3d Cir. 2009), the third circuit described the duty of articulation that is owed claimants who allege that they suffer from obesity-related disabling impairments, stating that "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." Diaz, 577 F.3d at 504; see also Sutherland v. Berryhill, No. 3:17-CV-00124, 2018 WL 2187795, at *9 (M.D. Pa. Mar. 6, 2018), report and recommendation adopted sub nom. Sutherland v. Berryhill, No. CV 3:17-0124, 2018 WL 2183359 (M.D. Pa. May 11, 2018). However, a statement by an ALJ in a decision denying benefits that the ALJ has "considered any additional and

cumulative effects of obesity," when coupled with even a brief factual analysis of the medical evidence as it relates to obesity and impairment is sufficient to satisfy this duty of articulation. Cooper v. Comm'r of Soc. Sec., 563 F. App'x 904, 911 (3d Cir. 2014). Further, when an ALJ considers the role of a claimant's obesity, evaluating it within the context of the overall record, consistent with the appropriate guidelines, this duty is satisfied. Woodson v. Comm'r Soc. Sec., 661 F. App'x 762, 765 (3d Cir. 2016). Finally, this responsibility is met when the ALJ explicitly considers the claimant's obesity when assessing that claimant's residual functional capacity. Hoyman v. Colvin, 606 F. App'x 678, 680 (3d Cir. 2015). Medina v. Berryhill, No. 3:17-CV-1941, 2018 WL 3433290, at *6–7 (M.D. Pa. June 8, 2018), report and recommendation adopted, No. CV 3:17-1941, 2018 WL 3426408 (M.D. Pa. July 16, 2018).

Here we believe that the ALJ's decision, read as a whole, fulfilled this duty of articulation. Despite the lack of any medical opinion evidence supporting this disability claim, the ALJ identified Kloiber's obesity, hypertension, and hearing loss as severe impairments. The ALJ then summarized the sparse clinical evidence in this case before crafting an RFC that appropriately addressed these medical conditions. Given the administrative record before the ALJ, nothing more was required.

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting <u>Hunter Douglas, Inc. v. NLRB</u>, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case.

## IV.   <u>Conclusion</u>

Accordingly, for the foregoing reasons, the final decision of the Commissioner denying these claims will be AFFIRMED.

An appropriate order follows.

> /S/ Martin C. Carlson
> Martin C. Carlson
> United States Magistrate Judge

DATED: November 23, 2021